# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-40058

In Re: VOLKSWAGEN OF AMERICA INC, a New Jersey Corporation;
VOLKSWAGEN AG, a foreign corporation organized under the laws of
Germany

Petitioners

Petition for Writ of Mandamus
to the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, and KING, JOLLY, DAVIS, SMITH, WIENER,
BARKSDALE, GARZA, BENAVIDES, STEWART, DENNIS, CLEMENT,
PRADO, OWEN, ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge, joined by JONES, Chief Judge, and SMITH,
BARKSDALE, GARZA, CLEMENT, OWEN, ELROD, SOUTHWICK, and
HAYNES, Circuit Judges:

The overarching question before the en banc Court is whether a writ of
mandamus should issue directing the transfer of this case from the Marshall
Division of the Eastern District of Texas—which has no connection to the
parties, the witnesses, or the facts of this case—to the Dallas Division of the
Northern District of Texas—which has extensive connections to the parties, the
witnesses, and the facts of this case. We grant the petition and direct the
district court to transfer this case to the Dallas Division.

I.

A.

On the morning of May 21, 2005, a Volkswagen Golf automobile traveling on a freeway in Dallas, Texas, was struck from behind and propelled rear-first into a flat-bed trailer parked on the shoulder of the freeway. Ruth Singleton was driving the Volkswagen Golf. Richard Singleton was a passenger. And Mariana Singleton, Richard and Ruth Singleton's seven-year-old granddaughter, was also a passenger. Richard Singleton was seriously injured in the accident. Mariana Singleton was also seriously injured in the accident, and she later died as a result of her injuries.

Richard Singleton, Ruth Singleton, and Amy Singleton (Mariana's mother) filed suit against Volkswagen AG and Volkswagen of America, Inc., in the Marshall Division of the Eastern District of Texas, alleging that design defects in the Volkswagen Golf caused Richard's injuries and Mariana's death.

In response to the Singletons' suit, Volkswagen filed a third-party complaint against the driver of the automobile that struck the Singletons, alleging that the Singletons had the ability to sue him but did not and that his negligence was the only proximate cause of the damages.

B.

Pursuant to 28 U.S.C. § 1404(a),[1] Volkswagen moved to transfer venue to the Dallas Division. Volkswagen asserted that a transfer was warranted as the Volkswagen Golf was purchased in Dallas County, Texas; the accident occurred on a freeway in Dallas, Texas; Dallas residents witnessed the accident; Dallas police and paramedics responded and took action; a Dallas doctor performed the autopsy; the third-party defendant lives in Dallas County, Texas; none of the

---

[1] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

plaintiffs live in the Marshall Division; no known party or non-party witness lives in the Marshall Division; no known source of proof is located in the Marshall Division; and none of the facts giving rise to this suit occurred in the Marshall Division. These facts are undisputed.

The district court denied Volkswagen's transfer motion. Singleton v. Volkswagen of Am., Inc., 2006 WL 2634768 (E.D. Tex. Sept. 12, 2006). Volkswagen then filed a motion for reconsideration, arguing that the district court gave inordinate weight to the plaintiffs' choice of venue[2] and, to state Volkswagen's arguments generally, that the district court failed meaningfully to weigh the venue transfer factors. The district court also denied Volkswagen's motion for reconsideration, and for the same reasons presented in its denial of Volkswagen's transfer motion. Singleton v. Volkswagen of Am., Inc., 2006 WL 3526693 (E.D. Tex. Dec. 7, 2006).

C.

Volkswagen then petitioned this Court for a writ of mandamus. In a per curiam opinion, a divided panel of this Court denied the petition and declined to issue a writ. In re Volkswagen of Am. Inc., 223 F. App'x 305 (5th Cir. 2007). The panel majority held that the district court did not clearly abuse its discretion in denying Volkswagen's transfer motion. Judge Garza wrote a dissenting opinion and in it noted that "[t]he only connection between this case and the Eastern District of Texas is plaintiffs' choice to file there; all other factors relevant to transfer of venue weigh overwhelmingly in favor of the Northern District of Texas." Id. at 307 (Garza, J., dissenting).

---

[2] The parties have referenced the deference given to a "plaintiff's choice of forum" in venue transfer cases. However, a transfer between federal courts pursuant to § 1404(a) is not a transfer between forums; it is a transfer between venues. Thus, in venue transfer cases, deference given to a plaintiff's initial choice is deference given to a plaintiff's choice of venue.

Volkswagen then filed a petition for rehearing en banc. The original panel interpreted the petition for rehearing en banc as a petition for panel rehearing, granted it, withdrew its decision, and directed the Clerk's Office to schedule the petition for oral argument. A second panel of this Court then heard oral argument on the issues raised for review. The second panel granted Volkswagen's petition and issued a writ directing the district court to transfer this case to the Dallas Division. In re Volkswagen of Am., Inc., 506 F.3d 376 (5th Cir. 2007).

The Singletons then filed a petition for rehearing en banc, which the Court granted. In re Volkswagen of Am., Inc., 517 F.3d 785 (5th Cir. 2008).

II.

In this opinion, we will first address whether mandamus is an appropriate means to test a district court's ruling on a venue transfer motion. Citing our precedents and the precedents of the other courts of appeals, we hold that mandamus is appropriate when there is a clear abuse of discretion. We note that the Supreme Court has set out three requirements for the issuance of the writ. Of these, we address first whether Volkswagen has established a clear and indisputable right to the writ. We begin by observing that the only factor that favors keeping the case in Marshall, Texas, is the plaintiffs' choice of venue. We discuss this privilege granted under 28 U.S.C. § 1391, and how the privilege is tempered by the considerations of inconvenience under § 1404(a). We demonstrate that a plaintiff's choice of forum under the forum non conveniens doctrine is weightier than a plaintiff's choice of venue under § 1404(a) because the former involves the outright dismissal of a case, and the latter involves only a transfer of venue within the same federal forum. After determining the correct standards to apply in the § 1404(a) analysis, we then consider the showing of inconvenience that Volkswagen has made. We review the district court's ruling and conclude that the district court abused its discretion in denying the transfer.

But that does not resolve the case. The question next becomes whether the district court's ruling was a clear abuse of discretion that qualifies for mandamus relief. Concluding that the district court gave undue weight to the plaintiffs' choice of venue, ignored our precedents, misapplied the law, and misapprehended the relevant facts, we hold that the district court reached a patently erroneous result and clearly abused its discretion in denying the transfer. Further finding that the showing satisfies the other requirements of the Supreme Court for mandamus, we conclude that a writ is appropriate under the circumstances of this case. We now begin this discussion.

III.

Because some suggestion is made that mandamus is an inappropriate means to test the district court's discretion in ruling on venue transfers, we will first turn our attention to this subject.

We—and the other courts of appeals that have considered the matter—have expressly "recognized the availability of mandamus as a limited means to test the district court's discretion in issuing transfer orders." In re Horseshoe Entm't, 337 F.3d 429, 432 (5th Cir. 2003).[3] There can be no doubt therefore that mandamus is an appropriate means of testing a district court's § 1404(a) ruling.

Although the Supreme Court has never decided mandamus in the context of § 1404(a), the Supreme Court holds that mandamus is an appropriate remedy for "exceptional circumstances amounting to a judicial usurpation of power or a

---

[3] See, e.g., In re Sealed Case, 141 F.3d 337, 340 (D.C. Cir. 1998); In re Josephson, 218 F.2d 174, 183 (1st Cir. 1954), abrogated on other grounds by In re Union Leader Corp., 292 F.2d 381, 383 (1st Cir. 1961); In re Warrick, 70 F.3d 736, 740 (2d Cir. 1995); In re Federal-Mogul Global, Inc., 300 F.3d 368, 378 (3d Cir. 2002); In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984); Lemon v. Druffel, 253 F.2d 680, 685 (6th Cir. 1958); In re Nat'l Presto Indus., Inc., 347 F.3d 662, 663 (7th Cir. 2003); Toro Co. v. Alsop, 565 F.2d 998, 1000 (8th Cir. 1977); Kasey v. Molybdenum Corp. of Am., 408 F.2d 16, 19–20 (9th Cir. 1969); Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965); In re Ricoh Corp., 870 F.2d 570, 573 n.5 (11th Cir. 1989).

clear abuse of discretion." Cheney v. U.S. Dist. Ct., 542 U.S. 367, 380 (2004) (citations and internal quotation marks omitted). Thus, the specific standard that we apply here is that mandamus will be granted upon a determination that there has been a clear abuse of discretion.

The Supreme Court also has said, however, that courts reviewing petitions for mandamus "must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous." Will v. United States, 389 U.S. 90, 98 n.6 (1967); see Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382–83 (1953) (rejecting reasoning that implied that "every interlocutory order which is wrong might be reviewed under the All Writs Act"). This admonition distinguishes the standard of our appellate review from that of our mandamus review. The admonition warns that we are not to issue a writ to correct a mere abuse of discretion, even though such might be reversible on a normal appeal. The inverse of the admonition, of course, is that a writ is appropriate to correct a clear abuse of discretion.

Admittedly, the distinction between an abuse of discretion and a clear abuse of discretion cannot be sharply defined for all cases. As a general matter, a court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents.[4] "A district court abuses its discretion if it: (1) relies on clearly

---

[4] See Albemarle Paper Co. v. Moody, 422 U.S. 405, 416 (1975) (noting that a decision calling for the exercise of discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review"); United States v. Taylor, 487 U.S. 326, 336 (1988) ("Whether discretion has been abused depends, of course, on the bounds of that discretion and the principles that guide its exercise. Had Congress merely committed the choice of remedy to the discretion of district courts, without specifying factors to be considered, a district court would be expected to consider 'all relevant public and private interest factors,' and to balance those factors reasonably." (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981))); James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993) ("Here, as generally, the judicial recognition of such factors as guides to a proper exercise of discretion operates to impose legal constraints on its exercise by trial courts and in turn to guide our review—to

erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir. 2003) (citation omitted). On mandamus review, we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result.

Thus, as to the suggestion that mandamus is an inappropriate means to test the district court's discretion in ruling on venue transfers, the precedents are clear that mandamus is entirely appropriate to review for an abuse of discretion that clearly exceeds the bounds of judicial discretion.[5]

---

which we now turn."); Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984) ("That is, when we say that a decision is discretionary, or that a district court has discretion to grant or deny a motion, we do not mean that the district court may do whatever pleases it. The phrase means instead that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law. An abuse of discretion, on the other hand, can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."); Gurmankin v. Costanzo, 626 F.2d 1115, 1119–20 (3d Cir. 1980) ("Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted. If the factors considered do not accord with those required by the policy underlying the substantive right or if the weight given to those factors is not consistent with that necessary to effectuate that policy, then the reviewing tribunal has an obligation to require the exercise of discretion in accordance with 'what is right and equitable under the circumstances and the law.'" (quoting Langnes v. Green, 282 U.S. 531, 541 (1931))); Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977) ("A judge's discretion is not boundless and must be exercised within the applicable rules of law or equity." (citing Petersen v. John Hancock Mut. Life Ins. Co., 116 F.2d 148, 151 (8th Cir. 1971))).

[5] See, e.g., In re Estelle, 516 F.2d 480, 483 (5th Cir. 1975) (noting that mandamus is appropriate "to confine an inferior court to a lawful exercise of its prescribed jurisdiction" and "to confine the lower court to the sphere of its discretionary power" (internal quotation marks and citations omitted)); see also In re Sandahl, 980 F.2d 1118, 1121–22 (7th Cir. 1992) (granting petition for writ of mandamus to vacate "patently erroneous" order); In re BellSouth Corp., 334 F.3d 941, 954 (11th Cir. 2003) (noting that "mandamus should ordinarily lie . . . only if the district court order is patently erroneous").

IV.

Because the writ is an extraordinary remedy, the Supreme Court has established three requirements that must be met before a writ may issue: (1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process"; (2) "the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable"; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." Cheney, 542 U.S. at 380–81 (alterations in original) (citations and internal quotation marks omitted). "These hurdles, however demanding, are not insuperable." Id. at 381.

Although, at the moment, we will not address these requirements in the context of and in the order enumerated in Cheney, we shall tie it all together further into the opinion. We shall first address the second requirement because it captures the essence of the disputed issue presented in this petition.

A.

The second requirement is that the petitioner must have a clear and indisputable right to issuance of the writ. If the district court clearly abused its discretion (the standard enunciated by the Supreme Court in Cheney) in denying Volkswagen's transfer motion, then Volkswagen's right to issuance of the writ is necessarily clear and indisputable. In re U.S. Dept. of Homeland Sec., 459 F.3d 565, 571 (5th Cir. 2006) (Dennis, J., concurring) (noting that petitioner must show "that its right to issuance of the writ is 'clear and indisputable' by demonstrating that there has been a 'usurpation of judicial power' or a 'clear abuse of discretion'"); In re Steinhardt Partners, 9 F.3d 230, 233 (2d Cir. 1993) (same); In re Wilson, 451 F.3d 161, 169 (3d Cir. 2006) (same); In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1184 (10th Cir. 2006) (same).

There can be no question but that the district courts have "broad discretion in deciding whether to order a transfer." Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting Caldwell v. Palmetto State Sav. Bank, 811 F.2d 916, 919 (5th Cir. 1987)). But this discretion has limitations imposed by the text of § 1404(a) and by the precedents of the Supreme Court and of this Court that interpret and apply the text of § 1404(a).[6]

To determine whether a district court clearly abused its discretion in ruling on a transfer motion, some petitions for mandamus relief that are presented to us require that we "review[] carefully the circumstances presented to and the decision making process" of the district court. In re Horseshoe Entm't, 337 F.3d at 432.[7] Others can be summarily decided. But—and we stress—in no

---

[6] Judge Friendly noted that "[e]ven when a statute or rule expressly confers discretion or uses the verb 'may' or some similar locution, there is still the implicit command that the judge shall exercise his power reasonably." Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 765 (1982). Judge Friendly also said, "When the 'you shall do it unless' type of formulation is not a realistic option because of the multiplicity of considerations bearing upon an issue, it is still useful for legislators or appellate courts to specify the factors that the trial judge is to consider. This has long been done, for example, with respect to the subject with which we began, dismissal on the ground of forum non conveniens, and its cousin, transfer under 28 U.S.C. section 1404. . . . If [the judge] has faithfully checked off and correctly decided each item, his determination should usually be allowed to stand. Per contra, if he has neglected or misapprehended items that would operate in favor of the losing party, an appellate court will have sound basis for finding that discretion was abused." Id. at 769–70 (emphasis added).

[7] When reviewing petitions for mandamus, courts of appeals often consider the venue transfer factors (or those factors applicable in other contexts) and the relevant facts to determine whether a district court clearly abused its discretion in granting or denying transfer (or the relief requested in other contexts). See, e.g., In re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988); A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 444–45 (2d Cir. 1966); In re Ralston Purina Co., 726 F.2d 1002, 1006 (4th Cir. 1984); ACF Indus., Inc. v. Guinn, 384 F.2d 15, 19–20 (5th Cir. 1967); In re Oswalt, 607 F.2d 645, 647 (5th Cir. 1979); In re McDonnell-Douglas Corp., 647 F.2d 515, 517 (5th Cir. Unit A May 1981); Castanho v. Jackson Marine, Inc., 650 F.2d 546, 550 (5th Cir. Unit A June 1981); In re First S. Sav. Ass'n, 820 F.2d 700, 709 (5th Cir. 1987); In re Ramu Corp., 903 F.2d 312, 319 (5th Cir. 1990); In re Horseshoe Entm't, 337 F.3d at 432; Chicago, Rock Island & Pac. R.R. v. Igoe, 220 F.2d 299, 305 (7th Cir. 1955); In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1295–1304 (7th Cir. 1995); Toro Co. v. Alsop, 565 F.2d 998, 999-1000 (8th Cir. 1977); see also McGraw-Edison Co. v. Van Pelt, 350 F.2d 361, 363 (8th Cir. 1965) ("Unless it is made clearly to appear that the facts and circumstances are without any basis for a judgment of discretion, the appellate court will not

case will we replace a district court's exercise of discretion with our own; we review only for clear abuses of discretion that produce patently erroneous results. We therefore turn to examine the district court's exercise of its discretion in denying Volkswagen's transfer motion.

1.

The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue. Volkswagen seeks to transfer this case to the Dallas Division of the Northern District of Texas. All agree that this civil action originally could have been filed in the Dallas Division. See 28 U.S.C. § 1391.

2.

Beyond this preliminary and undisputed question, the parties sharply disagree. The first disputed issue is whether the district court, by applying the forum non conveniens dismissal standard, erred by giving inordinate weight to the plaintiffs' choice of venue. We have noted earlier that there is nothing that ties this case to the Marshall Division except plaintiffs' choice of venue. It has indeed been suggested that this statutorily granted choice is inviolable. A principal disputed question, then, is what role does a plaintiff's choice of venue have in the venue transfer analysis. We now turn to address this question.

(a)

When no special, restrictive venue statute applies, the general venue statute, 28 U.S.C. § 1391, controls a plaintiff's choice of venue. Under § 1391(a)(1), a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." Under § 1391(c), when a suit is filed in a multi-district state, like Texas, a corporation is "deemed

---

proceed further to examine the district court's action in the situation. If the facts and circumstances are rationally capable of providing reasons for what the district court has done, its judgment based on those reasons will not be reviewed.").

to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Because large corporations, like Volkswagen, often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute "has the effect of nearly eliminating venue restrictions in suits against corporations." 14D Wright, Miller & Cooper, Federal Practice & Procedure § 3802 (3d ed. 2007) (noting also that, because of the liberal, general venue statute, "many venue disputes now are litigated as motions to transfer venue under Section 1404 of Title 28").

Congress, however, has tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404. The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a). See Norwood v. Kirkpatrick, 349 U.S. 29 (1955); cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947) ("[The general venue] statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts . . . . But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment."). Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.

(b)

With this understanding of the competing statutory interests, we turn to the legal precedents. We first turn to Gilbert because of its historic and precedential importance to § 1404(a), even today.

In 1947, in Gilbert, the Supreme Court firmly established in the federal courts the common-law doctrine of forum non conveniens. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248 (1981) (noting that "the doctrine of forum non

conveniens was not fully crystallized" until Gilbert). The essence of the forum non conveniens doctrine is that a court may decline jurisdiction and may actually dismiss a case, even when the case is properly before the court, if the case more conveniently could be tried in another forum. Gilbert, 330 U.S. at 507.

Shortly after the Gilbert decision, in 1948, the venue transfer statute became effective. The essential difference between the forum non conveniens doctrine and § 1404(a) is that under § 1404(a) a court does not have authority to dismiss the case; the remedy under the statute is simply a transfer of the case within the federal system to another federal venue more convenient to the parties, the witnesses, and the trial of the case. Thus, as the Supreme Court has said, "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience." Norwood, 349 U.S. at 32.[8]

That § 1404(a) venue transfers may be granted "upon a lesser showing of inconvenience" than forum non conveniens dismissals, however, does not imply "that the relevant factors [from the forum non conveniens context] have changed

---

[8] The district courts are permitted to grant transfers upon a lesser showing of inconvenience under § 1404(a) because §1404(a) venue transfers do not have the serious consequences of forum non conveniens dismissals. See Norwood, 349 U.S. at 31 ("'The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Section 1404(a) avoids this latter danger.'" (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952))); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (holding that a "change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms"); Ferens v. John Deere Co., 494 U.S. 516, 519 (1990) (applying the Van Dusen rule when a plaintiff moves for transfer).

or that the plaintiff's choice of [venue] is not to be considered." Id.[9] But it does imply that the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a forum non conveniens dismissal. And we have recognized as much, noting that the "heavy burden traditionally imposed upon defendants by the forum non conveniens doctrine—dismissal permitted only in favor of a substantially more convenient alternative—was dropped in the § 1404(a) context. In order to obtain a new federal [venue], the statute requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.'" Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1247 (5th Cir. 1983) (emphasis and first alteration added); see Piper Aircraft, 454 U.S. at 254 (noting the "relaxed standards for transfer").[10] Thus, the district court, in requiring Volkswagen to show that the § 1404(a) factors must substantially outweigh the plaintiffs' choice of venue,

---

[9] Indeed, we have adopted the Gilbert factors, which were enunciated in Gilbert for determining the forum non conveniens question, for determining the § 1404(a) venue transfer question. See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963).

[10] We have noted that a plaintiff's choice of venue is to be treated "as a burden of proof question." Humble Oil, 321 F.2d at 56; Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed."). The Singletons, however, argue that a plaintiff's choice of venue should be considered as an independent factor within the venue transfer analysis and argue that Norwood, because it indicated that the factors have not changed from the forum non conveniens context, requires this result. And, indeed, the district court considered the plaintiffs' choice of venue as an independent factor within the venue transfer analysis. A plaintiff's choice of forum, however, is not an independent factor within the forum non conveniens or the § 1404(a) analysis. In fact, the Supreme Court has indicated that a plaintiff's choice of forum corresponds to the burden that a moving party must meet: "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S.Ct. 1184, 1191 (2007) (emphasis added); see also Gilbert, 330 U.S. at 508 (indicating the convenience factors and then noting "[b]ut unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.

erred by applying the stricter forum non conveniens dismissal standard and thus giving inordinate weight to the plaintiffs' choice of venue.

As to the appropriate standard, in Humble Oil we noted that "the avoidance of dismissal through § 1404(a) lessens the weight to be given" to the plaintiff's choice of venue and that, consequently, "he who seeks the transfer must show good cause." 321 F.2d at 56. This "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.[11]

3.

We thus turn to examine the showing that Volkswagen made under § 1404(a) and the district court's response.

As noted above, we have adopted the private and public interest factors first enunciated in Gulf Oil Corp. v Gilbert, 330 U.S. 501 (1947), a forum non conveniens case, as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice. See Humble Oil, 321 F.2d at 56.

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of

---

[11] We emphasize that this is a different proposition from whether mandamus lies to address the district court's ruling, because as we have earlier noted, mandamus does not reach all erroneous rulings of the district court.

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter In re Volkswagen I] (citing Piper Aircraft, 454 U.S. at 241 n.6). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." Id.

Although the Gilbert factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. Moreover, we have noted that "none . . . can be said to be of dispositive weight." Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004).

(a)

Before the district court, Volkswagen asserted that a transfer was warranted because: (1) the relative ease of access to sources of proof favors transfer as all of the documents and physical evidence relating to the accident are located in the Dallas Division, as is the collision site; (2) the availability of compulsory process favors transfer as the Marshall Division does not have absolute subpoena power over the non-party witnesses; (3) the cost of attendance for willing witnesses factor favors transfer as the Dallas Division is more convenient for all relevant witnesses; and (4) the local interest in having localized interests decided at home favors transfer as the Volkswagen Golf was purchased in Dallas County, Texas; the accident occurred on a freeway in Dallas, Texas; Dallas residents witnessed the accident; Dallas police and paramedics responded and took action; a Dallas doctor performed the autopsy; the third-party defendant lives in Dallas County, Texas; none of the plaintiffs live in the Marshall Division; no known party or non-party witness lives in the Marshall

Division; no known source of proof is located in the Marshall Division; and none of the facts giving rise to this suit occurred in the Marshall Division.

(b)

Applying the Gilbert factors, however, the district court concluded that: (1) the relative ease of access to sources of proof is neutral because of advances in copying technology and information storage; (2) the availability of compulsory process is neutral because, despite its lack of absolute subpoena power, the district court could deny any motion to quash and ultimately compel the attendance of third-party witnesses found in Texas; (3) the cost of attendance for willing witnesses is neutral because Volkswagen did not designate "key" witnesses and because, given the proximity of Dallas to the Marshall Division, the cost of having witnesses attend a trial in Marshall would be minimal; and (4) the local interest in having localized interests decided at home factor is neutral because, although the accident occurred in Dallas, Texas, the citizens of Marshall, Texas, "would be interested to know whether there are defective products offered for sale in close proximity to the Marshall Division." Based on this analysis, the district court concluded that Volkswagen "has not satisfied its burden of showing that the balance of convenience and justice weighs in favor of transfer."

(c)

We consider first the private interest factor concerning the relative ease of access to sources of proof. Here, the district court's approach reads the sources of proof requirement out of the § 1404(a) analysis, and this despite the fact that this Court has recently reiterated that the sources of proof requirement is a meaningful factor in the analysis. See In re Volkswagen I, 371 F.3d at 203. That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous. All of the documents and physical evidence relating to the accident

16

are located in the Dallas Division, as is the collision site. Thus, the district court erred in applying this factor because it does weigh in favor of transfer.

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. As in In re Volkswagen I, the non-party witnesses located in the city where the collision occurred "are outside the Eastern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii)," and any "trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)." Id. at 205 n.4. Moreover, a proper venue that does enjoy absolute subpoena power for both depositions and trial—the Dallas Division—is available. As we noted above, the venue transfer analysis is concerned with convenience, and that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses. Thus, the district court erred in applying this factor because it also weighs in favor of transfer.

The third private interest factor is the cost of attendance for willing witnesses. Volkswagen has submitted a list of potential witnesses that included the third-party defendant, accident witnesses, accident investigators, treating medical personnel, and the medical examiner—all of whom reside in Dallas County or in the Dallas area. Volkswagen also has submitted two affidavits, one from an accident witness and the other from the accident investigator, that stated that traveling to the Marshall Division would be inconvenient. Volkswagen also asserts that the testimony of these witnesses, including an accident witness and an accident investigator, is critical to determining causation and liability in this case.[12]

---

[12] The Singletons argue that Volkswagen has not provided affidavits from these individuals indicating what specific testimony they might offer, has not explained why such testimony is important or relevant, and has not indicated that such testimony is disputed. In the forum non conveniens context, however, we have rejected "the imposition of a blanket rule requiring affidavit evidence." Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 371–72 (5th Cir. 1992); see also Piper Aircraft, 454 U.S. at 258

In In re Volkswagen I we set a 100-mile threshold as follows: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 371 F.3d at 204-05. We said, further, that it is an "obvious conclusion" that it is more convenient for witnesses to testify at home and that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Id. at 205. The district court disregarded our precedent relating to the 100-mile rule. As to the witnesses identified by Volkswagen, it is apparent that it would be more convenient for them if this case is tried in the Dallas Division, as the Marshall Division is 155 miles from Dallas. Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community. Moreover, the plaintiffs, Richard Singleton and Ruth Singleton, also currently reside in the Dallas Division (Amy Singleton resides in Kansas). The Singletons have not argued that a trial in the Dallas Division would be inconvenient to them; they actually have conceded that the Dallas Division would be a convenient venue. The district court erred in applying this factor as it also weighs in favor of transfer.

The only contested public interest factor is the local interest in having localized interests decided at home. Here, the district court's reasoning again disregarded our precedent in In re Volkswagen I. There, under virtually indistinguishable facts, we held that this factor weighed heavily in favor of transfer. Id. at 205-06. Here again, this factor weighs heavily in favor of

---

(rejecting the contention "that defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum").

transfer: the accident occurred in the Dallas Division, the witnesses to the accident live and are employed in the Dallas Division, Dallas police and paramedics responded and took action, the Volkswagen Golf was purchased in Dallas County, the wreckage and all other evidence are located in Dallas County, two of the three plaintiffs live in the Dallas Division (the third lives in Kansas), not one of the plaintiffs has ever lived in the Marshall Division, and the third-party defendant lives in the Dallas Division. In short, there is no relevant factual connection to the Marshall Division.

Furthermore, the district court's provided rationale—that the citizens of Marshall have an interest in this product liability case because the product is available in Marshall, and that for this reason jury duty would be no burden—stretches logic in a manner that eviscerates the public interest that this factor attempts to capture.[13] The district court's provided rationale could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case. That the residents of the Marshall Division "would be interested to know" whether a defective product is available does not imply that they have an interest—that is, a stake—in the resolution of this controversy. Indeed, they do not, as they are not in any relevant way connected to the events that gave rise to this suit. In contrast, the residents of the Dallas Division have extensive connections with the events that gave rise to this suit. Thus, the district court erred in applying this factor as it also weighs in favor of transfer.

4.

---

[13] Moreover, the facts do not favor the logic presented. The record indicates that the Volkswagen Golf was purchased from a location in the Dallas Division, and that Marshall, Texas, has no Volkswagen dealership.

The reader will remember that we began our discussion by addressing the three requirements set out by the Supreme Court in Cheney for the issuance of the writ of mandamus. Up until this point, all of our discussion has focused upon the second requirement: that the right to mandamus is clear and indisputable. The remaining question as to this second requirement is whether the errors we have noted warrant mandamus relief; that is, whether the district court clearly abused its discretion in denying Volkswagen's transfer motion. The errors of the district court—applying the stricter forum non conveniens dismissal standard, misconstruing the weight of the plaintiffs' choice of venue, treating choice of venue as a § 1404(a) factor, misapplying the Gilbert factors, disregarding the specific precedents of this Court in In re Volkswagen I, and glossing over the fact that not a single relevant factor favors the Singletons' chosen venue—were extraordinary errors. Indeed, "[t]he only connection between this case and the Eastern District of Texas is plaintiffs' choice to file there." In re Volkswagen of Am., Inc., 223 F. App'x 305, 307 (5th Cir. 2007) (Garza, J., dissenting).

In the light of the above, we hold that the district court's errors resulted in a patently erroneous result. Thus, Volkswagen's right to issuance of the writ is clear and indisputable, and the second requirement, under Cheney, for granting a petition for a writ of mandamus is therefore satisfied.

B.

We now return to the first and the third requirements for determining whether a writ should issue, as provided by the Supreme Court in Cheney.

The first requirement—that the petitioner must have no other adequate means to attain relief—is certainly satisfied here. As Judge Posner has noted, a petitioner "would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because [the petitioner] would not be able to show that it would have won the case had

it been tried in a convenient [venue]." In re Nat'l Presto Indus., Inc., 347 F.3d 662, 663 (7th Cir. 2003); see Fed. R. Civ. P. 61 (harmless error rule). Moreover, interlocutory review of transfer orders under 28 U.S.C. § 1292(b) is unavailable. Garner v. Wolfinbarger, 433 F.2d 117, 120 (5th Cir. 1970). And the harm—inconvenience to witnesses, parties and other—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle. Thus, the writ is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous failure to transfer venue.

As to the third requirement for granting a petition for a writ of mandamus, we must assure ourselves that it is appropriate in this case. We have addressed most of the reasons outlined above. The district court clearly abused its discretion and reached a patently erroneous result. And it is indisputable that Volkswagen has no other adequate remedy that would provide it with relief. Further, writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case. See United States v. Bertoli, 994 F.2d 1002, 1014 (3d Cir. 1993). Because venue transfer decisions are rarely reviewed, the district courts have developed their own tests, and they have applied these tests with too little regard for consistency of outcomes. Thus, here it is further appropriate to grant mandamus relief, as the issues presented and decided above have an importance beyond this case. And, finally, we are aware of nothing that would render the exercise of our discretion to issue the writ inappropriate.

We therefore conclude that all three of the Cheney requirements for mandamus relief are met in this case.

## V.

Thus, for the reasons assigned above, we grant Volkswagen's petition for a writ of mandamus. The Clerk of this Court shall therefore issue a writ of mandamus directing the district court to transfer this case to the United States District Court for the Northern District of Texas, Dallas Division.

MANDAMUS GRANTED;
TRANSFER OF CASE ORDERED.

KING, Circuit Judge, with whom DAVIS, WIENER, BENAVIDES, STEWART, DENNIS, and PRADO, Circuit Judges, join, dissenting:

In order to grant mandamus here, the majority proceeds by plucking the standard "clear abuse of discretion" out of the narrow context provided by the Supreme Court's mandamus precedent and then confecting a case—not the case presented to the district court—to satisfy its new standard. Notwithstanding almost two hundred years of Supreme Court precedent to the contrary, the majority utilizes mandamus to effect an interlocutory review of a nonappealable order committed to the district court's discretion. I respectfully dissent.

Before getting into the majority's analysis and its flaws, it is important to describe the case actually presented to the district court. The majority notes briefly that this is a products liability case, but its entire opinion proceeds as if this were simply a case in which the victims of a Dallas traffic accident were suing the driver of the offending car. That is not this case. The Singletons' Volkswagen Golf was indeed hit on its left rear panel by Colin Little, spun around, and slid rear-first into a flat-bed trailer parked by the side of the road. Emergency personnel found an unconscious Richard Singleton in his fully reclined passenger seat with Mariana Singleton (who was seated directly behind him) trapped underneath. Mariana later died from the head trauma she received from the seat, and Richard was left paraplegic. The Singletons sued Volkswagen, alleging that the seat adjustment mechanism of Richard's seat was defectively designed, resulting in a collapse of the seat during the accident. Thus, the case before the district court is first and foremost a products liability, design defect case that will depend heavily on expert testimony from both the plaintiffs and Volkswagen. No claim is made by Volkswagen that any of its experts is Dallas-based, and whether this case is tried in Marshall or Dallas will make little, if any,

difference—Volkswagen will be able to get its experts (from Germany or elsewhere) to trial regardless. The Dallas connections with the original accident become relevant if there is a finding of a design defect and the court turns to the third party action by Volkswagen against Colin Little, raising issues of causation and damages. Pretrial discovery and the trial itself will have to address those issues, but they are not the only, or even the primary, focus of this case. Finally, Little, the other party to the accident, has explicitly stated that the Eastern District is not an inconvenient forum for him.

The majority has correctly identified the three requirements for the issuance of a writ: (1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires"; (2) "the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable"; and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." Cheney v. U.S. Dist. Court, 542 U.S. 367, 380–81 (2004) (internal quotation marks and citations omitted). Where we differ is in the application of Cheney's three requirements. In particular, as I explain below, the majority fundamentally misconstrues Cheney's second requirement, which strictly limits mandamus to a "clear abuse of discretion or usurpation of judicial power." See Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383 (1953) (internal quotation marks omitted); In re U.S. Dep't of Homeland Sec., 459 F.3d 565, 571 (5th Cir. 2006) (Dennis, J., concurring). This case involved no such "clear abuse of discretion" or "usurpation of judicial power," and even the majority does not contend that the district court exceeded its power or authority under § 1404(a). Whether we agree with the district court's decision not to transfer this case is not controlling. There is no question that,

when the district court acts within its power and authority, mandamus is inappropriate to challenge the district court's decision.

Addressing the second Cheney requirement, the majority states that Volkswagen's right is clear and indisputable if the district court clearly abused its discretion. The majority explains that it will not "issue a writ to correct a mere abuse of discretion . . . . [A] writ is appropriate to correct a clear abuse of discretion." But how the majority differentiates "clear abuse" from "mere abuse" is anything but clear. To find clear abuse, the majority "review[s] carefully the circumstances" before the district court and goes on to find five specific "errors" in the district court's decision. Because Volkswagen concedes that the district court considered all the proper § 1404(a) transfer factors and no improper ones, the majority must reweigh these factors in order to find its errors. The majority's findings on these errors do not bear close inspection.

The district court first allegedly erred because it assigned too much weight to the plaintiffs' choice of venue by applying the forum non conveniens dismissal standard. The majority reaches this conclusion by completely mischaracterizing the district court's order. Essentially, the majority rests its conclusion on the fact that the district court's order denying transfer states that the movant "must show that the balance of convenience and justice substantially weighs in favor of transfer." For the majority, the district court's use of the word "substantially" indicates that it was requiring Volkswagen to make the showing necessary to obtain a forum non conveniens dismissal. But that is simply not the case. The explanation for the lower court's use of "substantially" becomes apparent when it is considered in the complete context of the transfer denial and the denial of reconsideration—that is, after a "careful review," which the majority does not make. In denying the transfer motion, the district court described the

movant's burden in a variety of ways: that the balance of convenience and justice must "substantially" weigh in favor of transfer; that "[t]he plaintiff's choice of forum will not be disturbed unless it is clearly outweighed by other factors"; and that the plaintiffs' "choice should not be lightly disturbed." In denying Volkswagen's motion for reconsideration, the district court explained that "decisive weight" was not given to the plaintiffs' choice; it was simply one factor among many. Thus, the district court drew upon several formulations common to the venue transfer context to describe the unremarkable notion that the party seeking transfer bears some heightened burden in demonstrating that a transfer is warranted. It did not apply the forum non conveniens dismissal standard.

Additionally under the plaintiff's choice analysis, the majority distorts the relationship between §§ 1391 and 1404. Congress has afforded plaintiffs a broad venue privilege in § 1391(a) and (c). And although aspersions are often cast on plaintiffs' "forum shopping," frequently by defendants also "forum shopping," we have explicitly stated that a plaintiff's motive for choosing a forum "is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor." McCuin v. Tex. Power & Light Co., 714 F.2d 1255, 1261–62 (5th Cir. 1983); cf. Miles v. Ill. Cent. R.R. Co., 315 U.S. 698, 707 (1942) (Jackson, J., concurring) (stating, in the context of FELA's broad forum selection clause, that "[t]here is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner"). Section 1404(a) does temper plaintiffs' broad statutory right in venue selection, but how Congress went about doing so is telling. Congress did not restrict the range of permissible venues available to plaintiffs—that is, it did not give defendants the right to

be sued only in certain forums, such as the most convenient. Rather, § 1404(a) vests a district court with the authority to transfer a case in its discretion. Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998). Section 1404(a), therefore, is not the mandatory tool to "prevent plaintiffs from abusing their privilege under § 1391" that the majority describes; it is a discretionary tool to be applied by a district court "[f]or the convenience of parties and witnesses, in the interest of justice." The majority's review of the plaintiffs' choice, then, is both misleading as to the facts and wrong on the law.

Continuing under Cheney's second requirement, the majority's "careful review" of the remaining four § 1404(a) transfer factors further fails to take account of the realities that surround a transfer decision and the realities in this particular case. Generally speaking, venue transfer motions are filed very early in the case. (For example, Volkswagen's motion was filed three weeks after the Singletons' original complaint.) At this early stage, assessing what best serves the "convenience of parties and witnesses" and "interests of justice" is hardly an exact science, since it is often unclear how the lawsuit will develop or what issues will be key. But the district court can draw on its experience with the day-to-day reality of litigation issues—an area in which appellate courts lack expertise. As former Second Circuit Judge Jerome Frank described the § 1404(a) inquiry: "'Weighing' and 'balancing' are words embodying metaphors which, if one is not careful, tend to induce a fatuous belief that some sort of scales or weighing machinery is available. Of course it is not. At best, the judge must guess, and we should accept his guess unless it is too wild." Ford Motor Co. v. Ryan, 182 F.2d 329, 331–32 (2d Cir. 1950) (footnote omitted).

I now turn to the majority's take on the four remaining § 1404(a) factors. The majority would have us believe that since this case involves only

27

a Dallas traffic accident, Dallas is the only convenient location for the Singletons' suit. But, while the convenience inquiry may begin with listing this case's Dallas connections, it does not end there. First for the Dallas documents: the district court's reasoning, where it "note[d] that this factor has become less significant" and concluded that "[a]ny documents or evidence can be easily transported to Marshall," hardly "reads the sources of proof requirement out of the" transfer analysis. Instead, the district court considered the reality that the Northern and Eastern Districts have required ECF (electronic case filing) for a long time and that all the courtrooms are electronic. This means that the documents will be converted to electronic form, and whether they are displayed on monitors in Dallas or Marshall makes no difference to their availability. Secondly, the court's subpoena power runs throughout the state, and an experienced district court can properly discount the likelihood of an avalanche of motions to quash. The majority's novel notion of "absolute subpoena power" results in only the most marginal of convenience gains, if any. Thirdly, the Dallas witnesses will not likely be inconvenienced because (as Volkswagen recognizes) discovery will be, in all likelihood, conducted in Dallas. Additionally, witnesses necessary to establish damages for Mariana's wrongful death—her teachers, neighbors, and friends—all reside in the Eastern District (where the Singletons resided at the time of the accident). And the majority's "100-mile rule"[1] is no proxy

---

[1] The so-called "100-mile rule," now enshrined by the en banc court, was made up out of the whole cloth by the panel that decided In re Volkswagen AG, 371 F.3d 201, 204–05 (5th Cir. 2004). It reads:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.

The power of this court to establish such a "rule" escapes me. A footnote "observe[s]" that a trial subpoena for a non-party witness is subject to a motion to quash when that witness must

28

for considering the realistic costs and inconvenience for witnesses that will attend the trial, particularly in a state as expansive as Texas. As for the two non-party fact witnesses who submitted identical affidavits asserting inconvenience, if the case goes to trial and if they end up testifying (two very big "ifs," the district court was no doubt aware), the court could reasonably conclude that traveling 150 miles, or two hours on a four-lane interstate (I-20), each way is only minimally inconvenient. And finally, with regard to the local interests factor, the majority's assertion that Eastern District residents "are not in any relevant way connected to the events that gave rise to this suit" overstates the case and glosses over the fact that this is a products liability suit. A Dallas traffic accident may have triggered the events that revealed a possibly defective product, but that does not change the nature of this suit. Drivers in the Eastern District could be connected to the actual issues in this case as they may be interested to learn of a possibly defective product that they may be driving or that is on their roads.[2] Thus, the majority's "careful review" under the § 1404(a) transfer factors is both erroneous as to its method and misleading as to the facts.

Having identified five "errors" in the district court's § 1404(a) analysis, the majority moves on to declare the sum of these errors as a "clear abuse" justifying the writ (as distinguished from "mere abuse" which wouldn't) by labeling the errors "extraordinary errors" and concluding that those "errors resulted in a patently erroneous result." "Thus, Volkswagen's right to the

---

travel more than 100 miles. Id. at 205 n.4.

[2] The district court did recognize Dallas residents' interest in a local traffic accident and balanced that interest against the Marshall residents' ongoing interest in possibly defective products within their district, concluding that this factor was neutral. The majority holds, however, that a district court may never consider the interests of those that might be affected by an alleged defective product.

issuance of the writ is clear and indisputable, and the second requirement, under Cheney, . . . is therefore satisfied."

The majority moves on to Cheney's remaining requirements. The first requirement, that the petitioner "have no other adequate means to attain relief," is "certainly satisfied here." This must be so because a petitioner "'would not be able to show that it would have won the case had it been tried in a convenient [venue]'" (alteration in the original) (quoting In re Nat'l Presto Indus., Inc., 347 F.3d 662, 663 (7th Cir. 2003), and citing FED. R. CIV. P. 61). We are told, then, that direct appeal is effectively unavailable to address a possible error in a § 1404(a) transfer decision. That is flat wrong. Direct appeal is available to review a transfer decision, as demonstrated by Action Industries, Inc. v. United States Fidelity & Guaranty Co., 358 F.3d 337 (5th Cir. 2004), a decision cited by the majority and in which a § 1404(a) transfer decision was reviewed after a final judgment. That such an appeal may have limited success due to the harmless error rule, FED. R. CIV. P. 61, does not mean—here or anywhere else that I know of—that direct appeal is "unavailable." But it is telling that a refusal to transfer from Marshall to Dallas is unlikely, in the majority's view, to affect Volkswagen's substantial rights: if Volkswagen's substantial rights will not likely be affected, how can this case satisfy the admittedly different, but even more stringent, requirements for mandamus?

The third Cheney requirement—that the issuing court be satisfied that the writ is appropriate—is, for the majority, easily met. Because "[t]he district court clearly abused its discretion," "Volkswagen has no other adequate remedy," and "district courts . . . have applied [venue transfer tests] with too little regard for consistency of outcomes," the majority convinces itself that mandamus is appropriate and issues the writ.

Despite the majority's own recognition that a § 1404(a) transfer decision is a nonappealable interlocutory order, the majority's decision is in striking derogation of remarkably consistent Supreme Court precedent stretching back to Chief Justice Marshall's statement in Bank of Columbia v. Sweeny that using mandamus in this way is "a plain evasion of the provision of the Act of Congress, that final judgments only should be brought before this Court for re-examination." 26 U.S. (1 Pet.) 567, 569 (1828) (emphasis in original). As the majority opinion seems to recognize, but then ignores, the Supreme Court has been explicit on repeated occasions that mandamus must not devolve into "interlocutory review of nonappealable orders on the mere ground that they may be erroneous." Will v. United States, 389 U.S. 90, 98 n.6 (1967).

> [T]he most that can be claimed . . . is that [the district court] may have erred in ruling on matters within [its] jurisdiction. But "[t]he extraordinary writs do not reach to such cases; they may not be used to thwart the congressional policy against piecemeal appeals." Mandamus, it must be remembered, does not "run the gauntlet of reversible errors." Its office is not to "control the decision of the trial court," but rather merely to confine the lower court to the sphere of its discretionary power.

Id. at 103–04 (internal citations omitted) (quoting first Parr v. United States, 351 U.S. 513, 520 (1956), and then Bankers Life, 346 U.S. at 382–83); e.g., Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943) ("[Mandamus] may not appropriately be used merely as a substitute for the appeal procedure prescribed by . . . statute."); Bankers Life, 346 U.S. at 383 ("[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial . . . ." (internal citation omitted)); see also In re Horseshoe Entm't, 337 F.3d 429, 435 (5th Cir. 2003)

31

(Benavides, J., dissenting) ("Mandamus is an extraordinary writ and should not be a substitute for appeal.").

The Court's prohibition on the use of mandamus as a substitute for appeal is based not only on the violation of 28 U.S.C. §§ 1291–1292 that it would entail but also on the resulting delay that those statutes were intended to avoid. This case is a painful and ironic example of that delay. Volkswagen's petition for mandamus was filed in this court on January 23, 2007, and this court will finally dispose of it during October 2008. Discovery continued in the district court until this court—apparently in order to prevent the case from becoming moot—stayed the trial proceedings on September 18, 2007, one day before the scheduled close of discovery. The second panel's opinion was issued one day after jury selection was slated to begin. In all probability, this case would have been concluded on its merits long before our court finishes with it, likely, not long after the second panel's opinion issued. The delay here (even without taking the en banc process into account) perfectly exemplifies the harm caused by conducting an interlocutory review under the aegis of mandamus.[3]

In order to enable the majority to correct the district court's "errors" in applying § 1404(a), the majority misapplies the "clear abuse of discretion" standard provided by the Supreme Court by divorcing the standard from the context that gave it meaning. The Court, in Bankers Life, held that "clear abuse of discretion" does not involve a district court's possibly erroneous exercise of its conceded authority; rather, clear abuse occurs when the district

---

[3] The petition for mandamus in In re Horseshoe Entertainment, 337 F.3d 429 (5th Cir. 2003), was filed on July 11, 2002, and mandamus issued on July 1, 2003. There was no en banc consideration of that case.

court lacks the judicial power or authority to make the decision that it did.  In Bankers Life, the petitioner was a plaintiff in a private antitrust suit naming numerous defendants, one of whom resided outside the district in which the suit was filed.  346 U.S. at 380.  Based on the applicable venue statute, the district court held that venue was improper as to that nonresident defendant and transferred the case pursuant to 28 U.S.C. § 1406(a).[4]  Id. at 380–81.  In seeking the writ, the petitioner's sole argument was that the district court had the power to order the transfer only if venue was improper and that venue was, in fact, proper.  Id. at 381.  The Court, however, declined to review the district court's possibly erroneous interlocutory decision and held that the alleged error in applying the statute was not a clear abuse of discretion.  Id. at 382–83.  It stated:

> [The district court's] decision against petitioner, even if erroneous—which we do not pass upon—involved no abuse of judicial power and is reviewable upon appeal after final judgment.  If we applied the reasoning advanced by the petitioner, then every interlocutory order which is wrong might be reviewed under the All Writs Act.  The office of a writ of mandamus would be enlarged to actually control the decision of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction.  In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous.  The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or "usurpation of judicial power" of the sort held to justify the writ in De Beers Consolidated Mines v. United States, 325 U.S. 212, 217 (1945).  This is not such a case.

---

[4] Section 1406(a) permits the transfer of a case where venue is improperly laid and is essentially "analogous" to § 1404(a).  Van Dusen v. Barack, 376 U.S. 612, 621 n.11 (1964).

33

Id. (citations and footnotes omitted). For the Court, no "clear abuse of discretion" occurred because there was no question that the district court had the power or authority to do what it purported to do—transfer a case from an improper venue to a proper venue—and the petitioner's sole argument regarding a possibly erroneous interlocutory order did not involve a "clear abuse of discretion." That is, for the purposes of mandamus, a "clear abuse of discretion" occurs when the district court has acted outside the scope of its power or authority.[5] It is therefore a mistake to equate the kind of ordinary error that might be labeled an "abuse of discretion" on appeal with the kind of error that justifies mandamus, as the majority does. Our inquiry on mandamus should center on reviewing errors that implicate a district court's power to act as it did. There is no claim here that the district court did not have the judicial power to deny the transfer motion. The claim is that it erred in the judgment that it made when it exercised the power that it concededly has. That is not the basis for a writ.

The Court has also been explicit in prohibiting the use of mandamus to correct the alleged errors of a district court in a decision committed to its discretion. "Where a matter is committed to discretion, it cannot be said that

---

[5] De Beers Consolidated Mines, referenced in Bankers Life, is further instructive. There, the Court stated that review under the All Writs Act is appropriate "if the [district court's] order was beyond the powers conferred upon [that] court." 325 U.S. 212, 217 (1945). It went on:

> When Congress withholds interlocutory reviews, [the All Writs Act] can, of course, not be availed of to correct a mere error in the exercise of conceded judicial power. But when a court has no judicial power to do what it purports to do—when its action is not mere error but usurpation of power—the situation falls precisely within the allowable use of [the All Writs Act].

Id.

a litigant's right to a particular result is clear and indisputable." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980) (internal quotation marks and citation omitted). The Court's reason for denying the use of mandamus to review a discretionary decision is instructive. Were it otherwise, the Court warned, "[t]he office of a writ of mandamus would be enlarged to actually control the decision of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction." Bankers Life, 346 U.S. at 383; see also Will, 389 U.S. at 104 (stating that the office of mandamus "is not to 'control the decision of the trial court,' but rather merely to confine the lower court to the sphere of its discretionary power" (quoting Bankers Life, 346 U.S. at 383)). Where, as the majority does here, an appellate court reviews the district court's analysis of the venue transfer factors and reweighs each factor as it feels appropriate, it is doing nothing less than controlling the district court's decision, and thus enlarging mandamus in the precise fashion that the Bankers Life Court warned against.

In sum, as this court has held for decades, on application for mandamus to direct a § 1404(a) transfer, when the district court has properly construed the statute and considered all necessary facts and factors, we should "not attempt to recite the facts nor to weigh and balance the factors which the District Court was required to consider in reaching its decision." Ex parte Chas. Pfizer & Co., Inc., 225 F.2d 720, 723 (5th Cir. 1955); see also In re Horseshoe Entm't, 337 F.3d at 435 (Benavides, J., dissenting) ("All necessary facts and factors were considered . . . and the transfer statute was properly construed. Under these circumstances we should not even attempt to weigh

and balance the factors which the district court was required to consider in reaching its decision.").

Cheney describes mandamus as a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" 542 U.S. at 380 (quoting Ex parte Fahey, 332 U.S. 258, 259–60 (1947)). To say the least, this is anything but a "really extraordinary cause." Volkswagen seeks no more than to transfer this case 150 miles from the Eastern District of Texas to the Northern District of Texas. As we said many years ago (about a transfer from the Southern to the Northern District of Alabama), when we continued to be faithful to the Supreme Court's direction, "[t]hat is not the basis for a writ." Garner v. Wolfinbarger, 433 F.2d 117, 120–21 (5th Cir. 1970). The bottom line is that how one assesses the § 1404(a) transfer factors in this case is essentially a matter of judgment. The district court's judgment, informed by years of trial experience in cases like this, differs from that of the majority, and in my view the district court's take on this case is more faithful to the actual case before it than is the majority's take. But even if I, sitting as a district judge, would have granted the motion to transfer, that kind of difference in judgment, particularly in a matter committed to the district court's discretion, does not justify an extraordinary writ.

Despite the Supreme Court's crystal clear guidance that mandamus is unavailable in these circumstances, conflicts among the circuits and within individual circuits have proliferated on the question whether the writ may be used as a tool to review a district court's § 1404(a) transfer decision. See generally 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3855, at 332 & n.29 (3d ed.

2007).  As the late Judge Friendly recognized more than 40 years ago, "[a]ppellate courts die hard in relinquishing powers stoutly asserted but never truly possessed . . . . [W]e should . . . end this sorry business of invoking a prerogative writ to permit appeals, which Congress withheld from us, from discretionary orders fixing the place of trial."  A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 445–46 (2d Cir. 1966) (Friendly, J., concurring).