**ACQIS LLC, Plaintiff,**

v.

**EMC CORPORATION, Defendant.**

**CASE NO. 6:13–CV–639**

United States District Court,
E.D. Texas, Tyler Division.

Signed September 10, 2014

George Edmond Chandler, Michael Kirk Mathis, Chandler Mathis & Zivley, P.C., Lufkin, TX, Peter J. Sauer, Wayne Odis Stacy, James Patrick Brogan, Cooley LLP, Broomfield, CO, Thomas J. Friel, Jr., Cooley LLP, Palo Alto, CA, W. Perry Zivley, Jr., Chandler, Mathis & Zivley, P.C., Houston, TX, for Plaintiff.

Josh A. Krevitt, Benjamin Hershkowitz, Jessica Lynn Greenbaum, Nicholas Rylan

Fung, Gibson Dunn & Crutcher, LLP, New York, NY, Blair A. Silver, Matthew D. McGill, Gibson Dunn & Crutcher LLP, Washington, DC, Krishnendu Gupta, Thomas A. Brown, William R. Clark, EMC Corporation, Hopkinton, MA, Nathan Robert Curtis, Gibson, Dunn & Crutcher LLC, Dallas, TX, for Defendant.

### ORDER

LEONARD DAVIS, UNITED STATES DISTRICT JUDGE

Before the Court is EMC Corporation's ("EMC") Motion to Transfer Venue to the District of Massachusetts (Docket No. 21). For the following reasons, the Motion is **CONDITIONALLY GRANTED.** The Court will retain jurisdiction over EMC through the claim construction process. This transfer will become effective the day the Court issues its claim construction opinion.

### BACKGROUND

ACQIS LLC ("ACQIS") alleges EMC infringes U.S. Patent Nos. 7,363,416 ("the '416 Patent"); 7,676,624 ("the '624 Patent"); 7,818,487 ("the '487 Patent"); 8,041,-873 ("the '873 Patent"); RE41,294 ("the '294 Patent"); RE42814 ("the '814 Patent"); RE43,171 ("the '171 Patent"); RE44,468 ("the '468 Patent"); RE42,984 ("the '984 Patent"); RE43,119 ("the '119 Patent"); and RE41,961 ("the '961 Patent") (collectively, "the patents-in-suit"). EMC filed the instant motion to transfer venue from the Eastern District of Texas to the District of Massachusetts. ACQIS is a Texas corporation with offices in McKinney, Texas, but it also has related operations in Mountain View, California, where ACQIS's president resides. Docket No. 32 at 1. EMC is a Massachusetts corporation, with its principal place of business in Hopkinton, Massachusetts. *Id.*

### APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004) (*"In re Volkswagen I"*).

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See In re Nintendo Co.,* 589 F.3d 1194, 1198 (Fed. Cir.2009); *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53, 56 (5th Cir.1963). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo,* 589 F.3d at 1198; *In re Volkswagen I,* 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Nintendo,* 589 F.3d at 1198; *In re Volkswagen I,* 371 F.3d at 203.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 314–15 (5th Cir.2008) (*"In re Volkswagen II"*).

Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo,* 589 F.3d at 1200; *In re Volkswagen II,* 545 F.3d at 315. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II,* 545 F.3d at 315.

## ANALYSIS

EMC moves to transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

### A. Threshold–Eligibility for Transfer

EMC argues that because its principal place of business is in the District of Massachusetts, venue is proper there. Docket No. 21 at 6. ACQIS does not dispute venue would be proper in the District of Massachusetts. Therefore, the threshold determination is satisfied.

### B. Private Factors

#### 1. *Relative Ease of Access to Sources of Proof*

■ Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II,* 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g., In re Nintendo,* 589 F.3d at 1199; *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed.Cir.2009);

*In re Volkswagen II,* 545 F.3d at 314–15. However, documents that have been moved to a particular venue in anticipation of litigation should not be considered. *In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1336–37 (Fed.Cir.2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.,* 626 F.3d 1252, 1256 (Fed. Cir.2010).

■ EMC argues this factor favors transfer because most of its evidence is in the District of Massachusetts. Specifically, EMC asserts that documents detailing the design, development, testing, sales, and marketing of accused products are primarily located in Massachusetts. Docket No. 21 at 8–9. While EMC admits some of its evidence is located in Seattle, it contends this evidence will need to be transported to either venue; therefore it should not "counsel against transfer." *Id.* at 9. In response, ACQIS argues this factor is neutral because evidence is scattered across the country, since its own documents are in Northern California, and EMC's evidence is in Washington and Massachusetts. Docket No. 25 at 9.

In this case, ACQIS admits its documents are not located in this district. Additionally, as the accused infringer, EMC is likely to possess a larger volume of documents relevant to this litigation. *See In re Genentech,* 566 F.3d at 1345. *See, e.g., In re Nintendo Co.,* 589 F.3d 1194, 1199 (Fed.Cir.2009) ("[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Here, EMC has evidence in Massachusetts. While some of EMC's evidence is located in Washington, this does not weigh against transfer as neither district is more convenient to Washington. Accordingly, this factor favors transfer.

## 2. *Convenience of Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I,* 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech,* 566 F.3d at 1343 ("Requiring a defendant to show that [a] potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The U.S. Court of Appeals for the Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I,* 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule," the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed.Cir.2008); *In re Volkswagen II,* 545 F.3d at 317. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re TS Tech,* 551 F.3d at 1320; *In re Volkswagen II,* 545 F.3d at 317. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re TS Tech,* 551 F.3d at 1320; *In re Volkswagen II,* 545 F.3d at 317. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I,* 371 F.3d at 204 & n. 3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech,* 566 F.3d at 1344. When witnesses will be required to travel "a significant distance no matter where they testify," then those witnesses are discounted for purposes of the "100 mile rule" analysis. *See id.* (discounting European witnesses in the convenience analysis when reviewing a denial of transfer from Texas to California). However, in cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

EMC alleges this factor favors transfer because most of the potential witnesses in this case are in the District of Massachusetts, and none are located in the Eastern District of Texas. Docket No. 21 at 10. EMC employs roughly 10,000 employees in Massachusetts, hundreds of whom work on the accused products in this case. *Id.* EMC has identified only a handful of witnesses based in Seattle with relevant information. *Id.* ACQIS counters that, as there are witnesses scattered across the country, this factor is neutral. Specifically, ACQIS argues that because its corporate witnesses and EMC's Seattle witnesses "all reside on the west coast," only "a few EMC witnesses based in Mas-

sachusetts w[ould] benefit from transfer." Docket No. 25 at 11.

While ACQIS's corporate witnesses and EMC's Seattle witnesses will be inconvenienced if this case is transferred to Massachusetts, they will be equally inconvenienced if this case remains in the Eastern District of Texas. Here, the vast majority of EMC's witnesses are located in Massachusetts, while there are no witnesses located in this district. Accordingly, this factor favors transfer.

### 3. *Availability of Compulsory Process*

■■■■ This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann–La Roche Inc.*, 587 F.3d at 1338.

The amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business. FED. R. CIV. P. 45(a)(2), 45(b)2, 45(c)(1)(A); *see* Committee Notes on Rules—2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance"). The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court. *See* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds ... that the witness is more than 100 miles from the place of hearing or trial ....").

■■■■ Here, EMC asserts that while no known third-party witnesses reside in or near the Eastern District of Texas, four former EMC employees are subject to subpoena power in the District of Massachusetts. Docket No. 21 at 9. ACQIS counters this factor is neutral, because there is no reason to believe that EMC's former employees would be unwilling to testify on behalf of EMC. Docket No. 25 at 11.

The Court, however, now has nationwide service of subpoena under the amended Rule 45. Further, EMC has only identified a few witnesses over which either district has absolute subpoena power. Therefore, this factor only slightly favors transfer.

### 4. *Other Practical Problems*

■■■■ Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed.Cir.2009) ("*In re Volkswagen III*"). Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 Fed.Appx. 59, 61 (Fed.Cir.2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

■■■■ ACQIS argues this case should not be transferred to the District of Massachusetts because of the co-pending liti-

gation involving the same patents in this Court and the Court's prior experience with some of the patents-in-suit. Docket No. 25 at 5.

ACQIS first filed suit in this Court in 2009, alleging infringement of eight patents, including the '416 Patent, by IBM and fourteen other companies. *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09–cv–148 (E.D.Tex. Apr. 2, 2009) ("*ACQIS I* "). During this litigation, the Court conducted a *Markman* on July 8, 2010, construed seven terms of the '416 Patent, and held a trial on three of the asserted patents, including the '416 Patent, for the remaining defendant IBM in February 2011. The jury found the remaining three asserted patents were infringed. *AQCIS I,* Docket No. 655. In October 2011, ACQIS filed another suit against IBM alleging infringement of the '873 Patent. *ACQIS LLC v. International Business Machines Corp.*, No. 6.11–cv–546, 2011 WL 5037730 (E.D.Tex. October 18, 2011) ("*ACQIS II* "). However, this case was terminated when ACQIS and IBM settled both cases in December 2011. *AQCIS I,* Docket No. 765; *ACQIS II,* Docket No. 23.

While the Court does have some experience with the '416 Patent, the Court does not have any meaningful experience with the '873 Patent, as the second *ACQIS* case settled before the parties attended a scheduling conference. Additionally, the Court has no experience with the other nine asserted patents in this case. Thus, while the Court has some familiarity with one of the patents in this case, this is not "substantial experience" as ACQIS alleges. *See* Docket No. 25 at 7.

However, ACQIS is correct that a transfer to the District of Massachusetts would require multiple courts to handle related cases, "increasing the burden of time, resources, and money on the judicial system and the parties." Docket No. 25 at 5

(citing *Uniloc USA, Inc. v. SlickEdit, Inc.*, No. 6:12–cv–814, Docket No. 36 at 7). Due to significant overlap, the Court consolidated this case with three co-pending cases. *See* Docket No. 38. All four cases involve the same Plaintiff and similarly assert many of the same patents. *See ACQIS LLC v. Alcatel–Lucent USA, Inc.*, No. 6:13–cv–638, Docket No. 33. Additionally, this Court already has a claim construction hearing scheduled for the four *ACQIS* cases. Transfer would result in duplicative and repetitive efforts in multiple courts, increasing the burden of time, resources, and money on the judicial system and the parties. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed.Cir.2010) (denying a petition for mandamus when "the district court correctly held a denial of transfer would produce gains in judicial economy"). Accordingly, this factor weighs strongly against transfer.

## C. Public Factors

### 1. *Local Interest*

▮▮▮▮ The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *In re Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens who used the widely sold product within the transferor venue in a products liability suit). Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales

within the venue. *In re Nintendo,* 589 F.3d at 1198.

■ EMC contends this factor favors transfer because its headquarters is in the District of Massachusetts, where it employs nearly 10,000 people, many of whom are involved in the development and implementation of the accused products. Docket No. 21 at 13. In its response, ACQIS admits this factor does favor transfer, but argues it only slightly favors transfer. Docket No. 25 at 12. Specifically, ACQIS argues because it is a corporate citizen of Texas and infringing acts occurred in this District, there is some interest in resolving this dispute here. *Id.*

Here there is no specific local interest in this district and significant local interest in Massachusetts, where EMC is headquartered. Accordingly, this factor favors transfer.

### 2. *Remaining Public Factors*

The remaining three public factors (court congestion, familiarity of forum with governing law, and conflicts of law) are not disputed by the parties, and are therefore neutral in the analysis.

### D. Summary of Factors & Conditional Transfer of EMC

■ Here, three factors favor transfer, one factor slightly favors transfer, three factors are neutral, while only one factor strongly weighs against transfer. Accordingly, EMC has shown that transfer of this case to the District of Massachusetts is clearly more convenient for parties and witnesses. However, to avoid duplicative work by multiple courts, the Court will retain this case until its claim construction opinion.[1]

Retaining EMC through the claim construction phase serves two important purposes. First, it conserves judicial resources by requiring only one district court to address the disputed claim terms, and second, it eliminates the risk of inconsistent claim constructions. *See In re Vistaprint Ltd.,* 628 F.3d at 1346; *In re Google Inc.,* 412 Fed.Appx. 295, 296 (Fed.Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective.") (citing *Cont'l Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). Because several defendants in the *ACQIS* cases remain in the Eastern District of Texas, this Court will conduct a *Markman* hearing in February regardless of when EMC is ultimately transferred to Massachusetts. However, if EMC were immediately transferred, a Massachusetts Court would also have to go through that same process. This would essentially become an exercise in duplicating work. *See Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (noting Congress was primarily concerned with convenience when it passed § 1404(a)). By transferring EMC immediately, the Court would be generating unnecessary work for the District of Massachusetts while failing to reduce its own workload. *See In re Volkswagen III,* 566 F.3d at 1351 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting *Cont'l Grain*

---

1. The Claim Construction hearing is set for February 12, 2015. 6:13–cv–638, Docket No. 76.

Co., 364 U.S. at 26, 80 S.Ct. 1470); *In re Vistaprint Ltd.*, 628 F.3d at 1344.

The claim construction process is one of the most difficult and time-consuming aspects of a patent case. Preparing for a *Markman* hearing and drafting the opinion require considerable judicial time and energy. It is illogical to obligate a second court to expend these same judicial resources to perform a duplicative task. Thus, retaining EMC through the *Markman* phase conserves limited judicial resources.[2]

■ Retaining EMC through the *Markman* phase serves a second important purpose—it limits the risk of inconsistent claim constructions. *See Cont'l Grain Co.*, 364 U.S. at 26, 80 S.Ct. 1470 (stating courts should avoid "a race in diligence among litigants for a trial in the District Court each prefers"); *cf. Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (emphasizing "the importance of uniformity in the treatment of a given patent"). The risk of inconsistent decisions is eliminated when a single district court construes the patents for all related cases. *See ColorQuick, L.L.C. v. Vistaprint Ltd.*, 2010 WL 5136050, at *8 (E.D.Tex. Jul. 22, 2010) (Davis, J.), *mandamus denied*, 628 F.3d 1342 (Fed.Cir.2010). Though the transferee court will not be bound by this Court's *Markman* opinion, it is hoped the opinion will be helpful to the transferee court.

Serially filed patent cases present a unique opportunity for cooperation among district courts. After *In re EMC Corporation*[3] and enactment of the America Invents Act,[4] it is more likely a court will transfer some defendants but keep others. *See Norman IP Holdings, LLC v. Lexmark Intern., Inc.*, 2012 WL 3307942, at *4 (E.D.Tex. Aug. 10, 2012); *Oasis Research, LLC v. Carbonite, Inc.*, 2012 WL 3544881, at *6 (E.D.Tex. Aug. 15, 2012). When this occurs, the transferor and transferee courts can confer to determine whether the transferring court retains jurisdiction through the *Markman* phase or immediately transfers the case.

The Supreme Court stated that § 1404(a) should be regarded as a "federal judicial housekeeping measure." *See Van Dusen*, 376 U.S. at 636, 84 S.Ct. 805. In that regard, which district court actually goes through the *Markman* process can be resolved by cooperation among the district courts. *Cf. In re Vistaprint*, 628 F.3d at 1344 (rejecting any form of bright-line rule in the § 1404(a) analysis). The district courts have no desire to perform duplicate work or to author rival *Markman* opinions. District judges do not view the *Markman* process as a competition, but have the same overall interest—to author the highest quality opinions in the most efficient manner possible. Thus, which venue conducts the *Markman* proceedings can be resolved as a necessary part of case management by dialogue between the district judges.

---

**2.** This Court frequently *transfers* cases to prevent duplicative claim construction opinions. *See, e.g., Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 768 (E.D.Tex.2009) (Davis, J.); *Ho Keung Tse v. Google, Inc.*, 2012 WL 6497124, at *3 (E.D.Tex. Dec. 13, 2012) (Davis, J.); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *7 (E.D.Tex. Sep. 30, 2010) (Davis, J.); *Third Dimension Semiconductor, Inc. v. Fairchild*

*Semiconductor Int'l, Inc.*, 2008 WL 4179234, at *2 (E.D.Tex. Sep. 4, 2008) (Davis, J.); *Interactive Music Tech., LLC v. Roland Corp. U.S.*, 2008 WL 245142, at *11 (E.D.Tex. Jan. 29, 2008) (Davis, J.).

**3.** 677 F.3d 1351 (Fed.Cir.2012).

**4.** Pub. L. No. 112–29, 125 Stat. 284 (2011).

Prior to issuing this opinion, the undersigned Chief Judge of the Eastern District of Texas conferred with the Chief Judge of the District of Massachusetts regarding the most efficient manner in which to manage the transfer of this serially filed patent case in light of this Court's pending *Markman* hearing. It was concluded that the best allocation of judicial resources was for the Eastern District to construe the claims for all related actions prior to transferring the case to the District of Massachusetts.

Another concern with the transfer is the potential for significant delay to the parties in getting back on schedule for a trial date in the transferee district. Motions to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute. To minimize the potential problem of undue delay, once the Eastern District of Texas enters its conditional transfer order, a copy will be promptly forwarded to the District of Massachusetts. The District of Massachusetts will open a case file and assign a judge to the transferred case. It is hoped that the judge will be able to accommodate the case's current trial dates, insofar as consistent with his or her own schedule.

Upon receipt of this Court's claim construction order and final order of transfer, EMC shall immediately inform the transferee judge and request a case scheduling conference for all future proceedings through trial. Until then, all orders entered in the Eastern District of Texas remain in effect and any motions will be filed in the Eastern District. Because the parties will already know its new case number and judge, any delay resulting from the transfer will be minimized, and the parties should be able to proceed to trial on a schedule as closely related to their original schedule as possible.

## CONCLUSION

EMC has shown that transfer of this case to the District of Massachusetts is clearly more convenient for the parties and witnesses. Accordingly, EMC's Motion to Transfer (Docket No. 21) is **CONDITIONALLY GRANTED. EMC WILL BE TRANSFERRED** to the District of Massachusetts immediately upon entry of this Court's *Markman* opinion.[5] Until that time, all parties shall continue to operate under their existing docket control orders. All motions or other matters shall be filed in this Court until the transfer becomes effective. Upon receipt of this order in the District of Massachusetts, the conditionally transferred case will be immediately assigned to a judge who will be informed of the case management schedule and progress of these cases. The judge will be requested to accommodate that schedule as nearly as possible, consistent with his or her own schedule. Immediately upon receipt of this Court's claim construction order, EMC shall notify its assigned judge in the District of Massachusetts, and shall request a case management conference be set as soon as possible.

---

**5.** This Court will also rule upon any Motions to Reconsider relating to its *Markman* opinion.