NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**In re:  NETFLIX, INC.,**
*Petitioner*

---

2022-110

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:21-cv-00080-JRG-RSP, Chief Judge J. Rodney Gilstrap.

---

**ON PETITION**

---

Before LOURIE, PROST, and TARANTO, *Circuit Judges.*

PER CURIAM.

### O R D E R

CA Inc. and Avago Technologies International Sales Pte. Limited (collectively, "CA"), both of which are subsidiaries of Broadcom Corp. brought this patent infringement case in the United States District Court for the Eastern District of Texas against Netflix, Inc.  The district court denied Netflix, Inc.'s motion seeking dismissal of the case for improper venue under 28 U.S.C. §§ 1400(b), 1406(a) or, alternatively, transfer of the case to the Northern District of California under 28 U.S.C. § 1404(a).  Netflix seeks a writ of mandamus directing the district court to grant its

motion; CA opposes.  We conclude that, under our precedent, the denial of transfer was a clear abuse of discretion, and we grant mandamus directing transfer.  We do not address Netflix's motion to dismiss for lack of venue.

BACKGROUND

CA filed this suit in the Marshall Division of the Eastern District of Texas, alleging that Netflix infringes five of its patents relating to networking techniques for improving the quality and efficiency of content delivery.  It is undisputed that Netflix does not own or lease any offices in the Eastern District.  CA's complaint premised venue over Netflix in CA's chosen forum based on the location of servers installed at internet service providers (ISPs) under contracts with Netflix that are part of Netflix's "Open Connect" content delivery network allowing local delivery of content to Netflix customers.

Netflix moved to transfer under § 1404(a) to the Northern District of California.  Netflix noted that both CA and Netflix are headquartered in that district; that district is where Netflix designed, developed, and manages the services and products that are the basis of the infringement allegations; and that district is where Avago and parent Broadcom Corp. sued Netflix based on the same products and where, after CA brought the present action, Netflix sought a declaratory judgment against CA concerning the patents asserted in this case. *See Broadcom, Inc. v. Netflix, Inc.*, 3:20-cv-4677 (N.D. Cal. Mar. 13, 2020); *Netflix, Inc. v. CA, Inc.*, 3:21-cv-03649-EMC (N.D. Cal. May 14, 2021).  As noted, Netflix also moved to dismiss for lack of venue, invoking this court's decision in *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020), to argue that Netflix's local servers could not support venue.

The district court, adopting the recommendation of the magistrate judge, denied both motions.  It ruled that the arrangements Netflix had with its ISPs to provide local content   delivery   through   in-district   servers   were

materially different from the server arrangements at issue in *Google*. On that basis, the court found venue proper and denied the motion to dismiss.

In denying the motion to transfer, the district court assessed the private and public interest factors enunciated in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc). The court determined that the factor addressing local interests favored transfer because the Northern District of California was the locus of the events giving rise to this suit. On the other hand, the court determined that the factor addressing administrative difficulties from court congestion weighed against transfer and the factors addressing relative ease of access to evidence and availability of compulsory process each also weighed slightly against transfer. The remaining factors, the district court held, favored neither of the two forums.

Of particular significance, the district court considered the declaration submitted by Netflix's Manager of Litigation and IP Enforcement, Elena Garnica, which stated that all its source code, financial information, and other documentation that would be at issue in this case are located at Netflix headquarters in the Northern District of California, but the court ruled that Netflix had provided an insufficient factual foundation for its claim that the sources of proof factor favored the Northern District of California. In addition, the court considered Netflix's identification of 21 potential witnesses resident in that district—product and engineering team employees who wrote articles about the accused technology discussed in CA's complaint, as well as an employee in Northern California knowledgeable about Netflix's finances. But the court determined that "[b]oth parties name several of Defendants' employees in both the Northern District of California and the Eastern District of Texas," so the "willing witness" factor was neutral. Finally, the court noted that the California forum could compel the testimony of patent prosecution attorneys, prior art inventors, and former Netflix employees, but the court gave that

ability little weight because patent prosecution attorneys "almost never testify" and, while CA and Netflix both were specific in identifying third-party witnesses, only CA, not Netflix, showed why testimony from them would be important. Appx027. As a result, the court deemed this factor to weight against transfer.

On balance, the district court decided that, with the factors mostly either neutral or weighing against transfer, Netflix had not met its "burden to show that the Northern District of California is 'clearly more convenient' than the Eastern District of Texas." Appx035 (quoting *Volkswagen*, 545 F.3d at 315). On that basis, the court denied transfer.

## DISCUSSION

Our review is governed by the law of the regional circuit, which in this case is the United States Court of Appeals for the Fifth Circuit. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Fifth Circuit law provides that a motion to transfer venue pursuant to section 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *Volkswagen*, 545 F.3d at 315) (internal quotation marks omitted). The district court's conclusion regarding transfer is a question that we review on mandamus for a clear abuse of discretion. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1375 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020).

"Motions to transfer are decided by weighing private and public interest factors to compare the relative convenience of the venues." *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *2 (Fed. Cir. Nov. 15, 2021); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *2 (Fed. Cir. Aug. 2, 2021) ("That determination is focused on a comparison of the relative convenience of the two venues based on assessment of the traditional transfer factors." (quoting

*In re HP Inc.*, 826 F. App'x 899, 901 (Fed. Cir. 2020) (citing *Radmax*, 720 F.3d at 288))).  We have explained that "the relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'"  *Juniper*, 14 F.4th at 1318 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

In this case, we agree with Netflix that the district court clearly erred in disregarding potential sources of proof and witnesses in the Northern District of California. And we conclude that correction of those errors, when combined with the district court's own determination regarding the local interest factor, means that the court clearly abused its discretion in denying transfer to the Northern District of California as the "center of gravity" of this case. *Id.* at 1323.

A

Netflix first contends that the factor addressing the sources of proof supports transfer because the bulk of the relevant evidence will likely be in its possession as the accused infringer, *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), all of its relevant sources of proof are at its headquarters in the Northern District of California, and the only evidence the district court identified in the Eastern District of Texas is merely duplicative of records also in the California forum.  Even under the deferential standard of review required on mandamus, we agree that the record supports the finding that Netflix urges, and the court's contrary finding rested on legal error.

Although Netflix introduced evidence that its sources of proof would be located at its headquarters in the Northern District of California, the district court gave that evidence no real weight, reasoning that Netflix had "failed to identify any specific evidence in the record and articulate the precise way that evidence supports its claim." Appx024.  At the same time, the court gave significant

weight to CA's identification of agreements between Netflix and six ISPs and agreements between Netflix and Amazon Web Services as likely available in the Eastern District of Texas. On that basis, the court concluded that the "sources of proof" factor weighs against transfer.

We agree with Netflix that the district court clearly erred. Netflix adequately pointed to specific types of evidence in Northern California that are likely to be relevant and material to the case. Ms. Garnica's declaration included sworn statements that Netflix's source code is located at its headquarters in the Northern District of California from where its product and engineering teams are based, "as is any other documentation about the research, design, and development of its streaming service." Appx238–39. She also stated that "Netflix maintains its financial documentation in the Los Gatos headquarters, where Netflix's primary corporate decisionmaking takes place." Appx239.

The district court apparently discounted these potential sources by requiring that Netflix "articulate the precise way that evidence supports its claim." Appx024. But the district court did not cite and CA has not cited authority that imposes a requirement of precision greater than was present here. To be sure, we have explained that it is within the district court's discretion to reject vague and unsupported statements regarding the location of sources of proof. *See In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014). But we see no basis for reasonably demanding more from Netflix than it provided at this stage of the litigation, when a transfer motion must be filed and ruled on. The specificity here is materially comparable to the specificity we held sufficient in *Juniper*, 14 F.4th at 1321. Nor have we been shown any reasons here to doubt that the documents and sources would be relevant and material to the issues here.

The district court's "sources of proof" determination rested, at bottom, on its improper disregard of the potential sources of proof in the Northern District of California. The district court also recited the availability of certain contracts in the Eastern District of Texas, but it did not find, and we have not been shown, that such contracts were not also available at Netflix headquarters in the transferee venue. We conclude that this factor had to be weighed as favoring transfer.

B

We draw the same conclusion with respect to the district court's assessment that the "compulsory process" factor here weighs in favor of the Eastern District of Texas. In two ways, the court's approach improperly disregarded the comparative advantage of the Northern District of California to compel the testimony of potential witnesses.

First, the district court rested its determination on its finding that Netflix had failed to show that the 13 non-party potential witnesses it identified in the Northern District of California would provide "important" testimony. But Fifth Circuit law does not treat the burden on the movant as imposing so high a standard. Rather, in applying that law, "we have cautioned that '[r]equiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.'" *Hulu*, 2021 WL 3278194, at \*3 (quoting *Genentech*, 566 F.3d at 1343). Here, Netflix, in its transfer motion, set forth a sufficient explanation of why the identified third-party witnesses in the Northern District of California likely had information relevant and material to the issues to be litigated in this case. Netflix noted that the identified patent prosecution attorneys had information pertaining to the prosecution history of the patents; the identified former employees authored articles cited by CA itself to support its infringement allegations and one former employee

submitted a declaration in another related case; and identified individuals knowledgeable about prior art pertaining to invalidity issues.

Second, the district court stated that "prosecuting attorneys almost never testify, partly due to privilege issues but mainly because they have little relevant knowledge not more easily obtained from other sources." Appx027. But we rejected a similar rationale in *Hulu*. There, the district court substituted its own generalization that prior-art witnesses are unlikely to testify at trial in place of any case-specific reason to believe that the particular identified potential witnesses would not testify. 2021 WL 3278194, at *3. *Hulu* held that such a categorical rejection of the significance of identified witnesses, untethered to the facts of the particular case, was an abuse of discretion. *Id.*; *see Juniper*, 14 F.4th at 1319. The court in this case made a similar error in categorically giving no weight to Netflix's patent prosecution witnesses.

Those errors amount to an abuse of discretion. Even were we not to consider all the identified patent prosecution attorneys, this factor would still tilt strongly toward transfer because Netflix identified far more third-party witnesses in the California forum than were identified in the Texas forum. *See In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."). In any event, the record here cannot support the district court's determination that this factor favors the Eastern District of Texas.

C

We also conclude that the "willing witness" factor should have been weighed in favor of transfer, not deemed neutral, as the district court deemed it. The district court's ruling rested on the fact that CA had identified Netflix

employees in Texas as potential witnesses in this case. That ruling, we conclude, was a clear abuse of discretion.

Netflix submitted a sworn declaration attesting to the fact that the accused technology was designed, developed, and managed from its Northern California headquarters, which is also where its product and engineering teams are located and where its primary corporate decisionmaking takes place. Netflix identified 21 employees in the Northern District of California as potential witnesses that were part of its product and engineering teams. In particular, Netflix noted that these employees had written articles about the accused technology on which CA relied in its complaint and thus may serve as witnesses on the design, development, and implementation of the accused technology. Netflix also identified an executive in the Northern District of California with knowledge of Netflix's finances who could also testify. It further appears undisputed that one of the inventors resides in the Northern District of California full-time and another inventor lives part-time in the Northern District of California.

The court gave equal weight to seven Netflix employees who work in the Eastern District of Texas. But CA was not nearly as specific about why those employees may have relevant and material information to this case; it merely stated that, because the employees have some connection to the streaming technology at issue in this case, "it appears just as likely that these East Texas employees have as much relevant information as the employees Netflix identified who live in the Northern District of California." Appx285. Even without second-guessing the court's apparent conclusion that the CA-identified employees may have relevant information, Netflix made a far more compelling showing on this factor.

CA was more specific in its filings before the district court about what potential testimony could be provided by two other Netflix employees who were located in neither

the transferee nor transferor venue.  But any significance of those two witnesses is slight in the mix as a whole.  In this case, we conclude, as we have before, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

For these reasons, the comparison of the cost of attendance for willing witnesses is not neutral between the Eastern District of Texas and the Northern District of California but rather favors the transferee forum.

D

Finally, there is no sound basis for the district court to premise its denial of transfer in these circumstances on its modestly faster average time to trial.  We have held that when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347; *see Juniper*, 14 F.4th at 1322. Under our relevant precedents, we conclude that the time-to-trial statistics provided here are plainly insufficient to warrant keeping this case in the Texas forum given the striking imbalance favoring transfer based on the other convenience factors.

Accordingly,

IN RE: NETFLIX, INC.                                                                11

IT IS ORDERED THAT:

The petition is granted to the extent that the court's order denying Netflix's motion is vacated and the court is directed to grant a transfer of the case to the Northern District of California.

FOR THE COURT

January 19, 2022            /s/ Peter R. Marksteiner
Date                        Peter R. Marksteiner
                            Clerk of Court